## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KAHAMA VI, LLC,

      Plaintiff,

v.                                        Case No: 8:11-cv-2029-T-30TBM

HJH, LLC, ROBERT E.W. MCMILLAN,
III , WILLIAM R. RIVEIRO, JOHN
BAHNG, HOWARD S. MARKS, OLD
REPUBLIC NATIONAL TITLE
INSURANCE COMPANY and KEVIN
PATRICK DONAGHY,

      Defendants.

---

## ORDER

THIS CAUSE comes before the Court upon the Marks' Motion and Memorandum of Law for Summary Judgment as to Count VIII: Fraudulent Transfer of Plaintiff's Third Amended Complaint (Dkt. 209) (the "Motion"), Plaintiff's Response to Motion for Summary Judgment of Howard Marks (Dkt. 225), and Plaintiff's Response (Dkt. 324). Upon review and consideration, it is the Court's conclusion that the Motion should be granted.

## BACKGROUND

Plaintiff, Kahama VI, LLC ("Kahama") filed an action to enforce a promissory note against the borrower, HJH, LLC ("HJH") and four individual guarantors: Robert E. W.

McMillan, III, John Bahng, William Riveiro, and Kirsten L. Riveiro.[1]   Kahama filed for foreclosure against HJH in the case styled *Kahama VI, LLC v. HJH, LLC*, M.D. Fla. Case No. 6:12-cv-01922-T30-TBM, which the Court consolidated with this action.   The property at issue in the foreclosure action is undeveloped beachfront property located in New Smyrna Beach, Florida (the "Property").

In its Second Amended Complaint, Kahama added Defendant Howard S. Marks ("Marks"), alleging causes of action for abuse of process, fraudulent transfer, slander of title, unjust enrichment, breach of contract/good faith and fair dealing, and breach of fiduciary duty.   Only the fraudulent transfer claim survives as of the date of this Order. Marks served as counsel for HJH in a state court foreclosure action and other proceedings related to the Property.   His prior firm also acted as the title insurance agent for the title insurance policies issued to HJH (the "Owner's Title Policy") and Kahama (the "Lender's Title Policy").   The policies are attached to the complaint as Exhibit 7 and 8, respectively.

HJH became involved in a dispute with the City of New Smyrna Beach (the "City") and Volusia County (the "County") regarding a 1917 dedication and several subsequent recordings on the Property.   The dedication and recordings allegedly created a public easement on the east 150 feet of the Property and, because of this, the City would not authorize HJH to build beachfront condominiums on the Property as planned.   HJH made a claim on its Owner's Title Policy and, in response, Old Republic filed a complaint against the City and County in the case styled *HJH, LLC v. Volusia County, Florida, et. al.*, Volusia

---

[1] Plaintiff voluntarily dismissed Kirsten L. Riveiro from the case (Dkt. 60).

County Circuit Court Case No. 2008-20156-CINS-02 (the "Quiet Title Action").   Old Republic retained Marks as counsel for HJH in the Quiet Title Action.   The City and HJH settled the claim in exchange for $100,000 and various conditions on the development of the Property (the "Settlement").

On or about October 17, 2012, Marks' firm, Burr & Forman, LLP, received a $100,000 check from the insurance company representing the City pursuant to the Settlement, which was deposited in the firm's trust account on behalf of HJH.   Then, on or about January 29, 2013, Marks' firm issued a check for $100,000 to HJH at Marks' direction (the "Transfer").   Kahama alleges that Marks engaged in a fraudulent transfer when he accepted the settlement finds on behalf of HJH, and later disbursed it to HJH, himself and others.   Kahama claims that Marks also pursued an invalid title claim, and used the Quiet Title Action for the fraudulent purpose of delaying the foreclosure action and thwarting Kahama's collection efforts against HJH and the guarantors.   Marks now moves for summary judgment on the fraudulent transfer claim.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."   *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248 (1986) (emphasis in original).   The substantive law applicable to the claimed causes of action will identify which facts are material.   *Id.*   Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor.   *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial.   *Celotex,* 477 U.S. at 324.   The evidence must be significantly probative to support the claims.   *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990).   "[I]f factual issues are present, the Court must deny the motion and proceed to trial."   *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983).   A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

Kahama seeks to avoid the Transfer under the Florida Uniform Fraudulent Transfer Act ("FUFTA").   Under the FUFTA, a creditor may avoid, or rescind, a transfer of assets

made from a debtor to a transferee if the transfer was fraudulent.   Fla. Stat. § 726.108(1)(a).   Kahama asserts that it is creditor within the definition of § 726.108(1)(a) pursuant to the promissory note and the guaranties executed by Defendants (the "Instruments"), which are secured by the Property.

Marks asserts that there is no Florida jurisprudence that supports Kahama's claim that a transfer of trust funds held by an attorney belonging to his client is a fraudulent transfer under the FUFTA.   Marks argues that as HJH's attorney, he was obligated to disburse the settlement funds in accordance with instructions from his client and therefore lacked the requisite dominion over the settlement funds to be liable for fraudulent transfer.

It is undisputed that Marks' firm Burr & Forman, LLP received $100,000 in its trust account on behalf of HJH from the insurance company representing the City of New Smyrna Beach pursuant to the Settlement.   The firm later issued a check for $100,000 to HJH.   Marks has provided evidence that neither he nor his firm retained any of the funds from the Settlement, nor did he distribute the money to "himself and others" as alleged in the Third Amended Complaint.   Notably, the Transfer was not from HJH, the debtor, to a transferee, but rather from Marks to HJH, alone.   Kahama has not presented any evidence that Marks retained any portion of the settlement funds for himself or distributed any portion of the settlement funds to any third party.

To plead a cause of action for violation of the FUFTA under § 726.105, plaintiffs must prove that: (1) they were creditors who were defrauded, (2) that defendant intended to commit the fraud, and (3) that the fraud involved a conveyance of property that could have been applicable to the payment of the debt due.   *See Dillon v. Axxsys Int'l, Inc.*, 185

5

Fed. App'x 823, 828–29 (11th Cir. 2006) (citing *Nationsbank, N.A. v. Coastal Utils. Inc.*, 814 So. 2d 1227, 1229 (Fla. 4th DCA 2002)).   Alternatively, under § 726.106, a transfer is fraudulent if: (1) the creditor's claim arose before the transfer was made; (2) the debtor did not receive a reasonably equivalent value in exchange for the transfer; and (3) the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

The Florida Supreme Court has reasoned that because the FUFTA does not refer to parties other than debtors and transferees, to allow claims to be brought against other parties would "expand the FUFTA beyond its facial application and in a manner that is outside the purpose and plain language of the statute."   *Freeman v. First Union Nat. Bank*, 865 So. 2d 1272, 1277 (Fla. 2004); *see also Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1089 n. 7 (11th Cir. 2004).   Consistent with this analysis, the Florida Supreme Court concluded that the "FUFTA was not intended to serve as a vehicle by which a creditor may bring a suit against a non-transferee party (like [the bank] in this case) for monetary damages arising from the non-transferee party's alleged aiding-abetting of a fraudulent money transfer."   *Id*.   This analysis is appropriately applied to the instant facts because Marks was not a transferee as envisioned by the statute.   Rather, Marks' firm transferred the Settlement funds from its trust account *to* HJH and did not receive any funds *from* HJH.

Kahama fails to cite case law supporting its claim that Marks committed fraud on a creditor by ordering the Transfer.   Kahama attempts to support its claim by analogizing the instant case to *Martinez v. Hutton (In re Harwell),* 628 F.3d 1312 (11th Cir. 2010).   However, Kahama's reliance on *Harwell* is misplaced.   While Kahama's heavy use of

*Harwell* may have been prompted by this Court's reference to *Harwell* in this Court's September 12, 2013 Order (Dkt. 135), upon further reflection, the Court concludes that the facts of the instant case are distinguishable from *Harwell* and do not sustain a claim for fraudulent transfer as to Marks.   Although this Court cited to *Harwell* for the proposition that an attorney may be an initial transferee for fraudulent transfer purposes, it did not hold that Marks is an initial transferee based on the allegations pled.   The facts in *Harwell* bear critical differences to the facts in this case, necessitating a different outcome.   First, *Harwell* involved a trustee's "clawback" claim in the bankruptcy court, not a fraud upon a creditor claim under the Florida statute.   Second, the Eleventh Circuit in *Harwell* based its ruling on the assumption that the debtor's attorney was the mastermind of the debtor's fraudulent transfer scheme.   Analogous allegations do not exist here.

In *Harwell*, the debtor's attorney became involved after the debtor already had a judgment against him in another state.   Despite this, the attorney assisted the debtor in disbursing settlement proceeds resulting from an unrelated dispute.   Upon a settlement deposit into the attorney's trust account, the attorney, with knowledge of the judgment and collection efforts against the debtor, disbursed the funds to various entities other than his client, including the debtor's wife.   When the attorney received another settlement payment, he disbursed the funds to seventeen different entities.   After receiving a writ of garnishment from the creditor, the attorney stopped payment on two checks, and actively defeated the writ of garnishment on a technicality.   The attorney then quickly withdrew all the remaining funds, obtained cashier's checks on behalf of his client and issued them to the debtor's wife, father and another creditor.   The attorney testified that this was not

his usual practice.   The attorney actively assisted his client in avoiding payment on a valid judgment by directing funds to his client's family and other creditors.

The facts in this case are significantly different.   Kahama did not have a judgment against HJH, Marks did not disburse the funds to himself or third parties, and HJH received the entire proceeds of the settlement check.   Further, Kahama did not file a pre-judgment writ of garnishment, and contacted Marks only after the funds were disbursed.   As stated in *Harwell*,

> [i]n the vast majority of cases, a client's settlement funds transferred in and out of a lawyer's trust account will be just like bank transfers, and lawyers as intermediaries will be entitled to a mere conduit status because they lack control over the funds. Mere conduits, such as lawyers and banks, do not have an affirmative duty to investigate the underlying actions or intentions of the transferor.

*Id.* at 1324.

Despite several depositions and extensive discovery, Kahama has failed to identify specific facts showing a genuine issue of fact for trial.   Kahama has failed to present evidence that Marks had any control over the Settlement funds in his firm's trust account beyond his ability to release the funds at his client's direction and in accordance with the Settlement Agreement.   Kahama made no showing that Marks acted in bad faith or distributed Settlement funds to any party other than HJH.   Accordingly, it is the Court's conclusion that summary judgment should be granted.   It is therefore

ORDERED AND ADJUDGED that:

1. Marks' Motion and Memorandum of Law for Summary Judgment as to Count VIII: Fraudulent Transfer of Plaintiff's Third Amended Complaint (Dkt. 209) is GRANTED.

2. The Clerk is directed to enter judgment in favor of Marks and against Kahama on Count VIII of the Third Amended Complaint.

**DONE** and **ORDERED** in Tampa, Florida, this 17th day of September, 2014.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
Counsel/Parties of Record

S:\Odd\2011\11-cv-2029 marks sj 209.docx