**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

KAHAMA VI, LLC,

      Plaintiff,

v.                                                           Case No: 8:11-cv-2029-T-30TBM

HJH, LLC, *et al*.

      Defendants.

_____

## <u>ORDER</u>

This lawsuit involves a title insurance policy covering a parcel of foreclosed beachfront property in New Smyrna Beach, Volusia County, Florida. It began in 2011 when Plaintiff Kahama sought to recover unpaid proceeds from a note secured by the property. (Dkt. 1). But in 2013 Kahama's state-court foreclosure action on the property stalled, in part because the county asserted an ownership interest in the property. That claim led to another state-court case, a quite-title action, and this case expanded to include Old Republic National Title Insurance Company as Defendant and claims against it for fraudulent misrepresentation and breach of contract. (Dkt. 150).

After years of litigation and several motions to dismiss and motions for summary judgment, the case again winnowed. Now only two claims remain, both against Old Republic, both under Count XII of the third-amended complaint for breach of contract. (Dkt. 150). In the first, Kahama alleges that Old Republic breached the title-insurance policy by failing to conduct a reasonable title search. More specifically, this claim alleges

that Old Republic breached by failing to identify the ownership interest—on the east, beach-side 150 feet of the property—that the county asserted in the underlying quiet-title action. In the second claim, Kahama alleges that Old Republic breached the insurance policy for failing to diligently prosecute that action.

As that action progressed in state court, the parties moved for summary judgment in this Court on all claims in Count XII. (Dkts. 454, 459). The Court denied Kahama's motion and granted summary judgment in favor of Old Republic on all claims but the two that remain. A ruling on these two claims, the Court concluded, would require a resolution of the then-unresolved quiet-title action, which was then on appeal to Florida's Fifth District Court of Appeal. (Dkt. 486, pp. 16, 19). The Court abated this case pending that appeal. (Dkt. 490).

By June 2016, Kahama had foreclosed on the property, the Fifth District had issued its appellate opinion, and an amended final judgment incorporating the Fifth District's opinion had been entered in the quiet-title action. This case was re-opened, and Old Republic renewed its motion for summary judgment on what remained of Count XII.

That motion (Dkt. 546) and Kahama's response (Dkt. 570) are now before the Court. The Court has carefully considered these filings, the record, the law, and the points raised by counsel at oral argument. As explained in more detail below, the Court concludes that the appeal in the quiet-title action fully restored the property's title—which includes Kahama's interest as lien-holder—to precisely what was described in the property deed and in the title-insurance policy issued by Old Republic. In other words, Old Republic, representing Kahama's interests, prevailed in the quiet-title action. As a matter of law,

Kahama cannot establish that Old Republic did not prosecute the action diligently. Similarly, having prevailed, Kahama cannot establish a loss compensable under the policy. Any loss Kahama may suffer will have resulted from land-use regulatory changes, not title defects. Old Republic's motion for summary judgment will be granted.

## Background

The Court provided a factual background of this case in its previous summary judgment order. *See Kahama VI, LLC v. HJH, LLC, et al.*, No. 8:11-cv-2029-T-30TBM (M.D. Fla. Dec. 29, 2014) (CM-ECF Dkt. 486); *see also id.* (CM-ECF Dkt. 135). Some of those facts, and some additional facts, are worth recounting here.

In 2010, Kahama acquired the mortgage, notes, and guarantees to beachfront property in Volusia County, Florida, from a predecessor mortgagee. The property at issue—which had an eastern boundary at the mean high-water line of the Atlantic Ocean and extended west approximately 300 feet—had initially been purchased in 2004 by real-estate developer HJH, LLC for the purpose of constructing residential units. Based on local land-use regulations then in effect, specifically those governing property density calculations, HJH envisaged the construction of a multi-floor and multi-unit residential space. As part of HJH's purchase, Old Republic provided an owner's and lender's title-insurance policy on the property, a policy Kahama later acquired.

The policy stated that the insured property, recorded in Volusia County, was owned in fee simple, and the policy insured against "loss or damage" by reason of the following:

1. Title to the interest being vested in some person or entity other than the insured;

2. Any defect in or lien or encumbrance on the title;

3.  Unmarketability of the title;

4.  Lack of a right of access to and from the land; and

5.  The invalidity or priority of the mortgage lien.

(Lender's Policy, Dkt. 546-1, p. 2). If any party were to assert a title claim adverse to the insured, the policy required Old Republic to defend the claim "without unreasonable delay." And if Old Republic initiated an action to establish title, it would be required to do so "diligently." (Id. at 3).

The policy also contained exclusions that are now relevant. Specifically, the policy did not insure losses caused by the following:

> Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to [] the occupancy, use, or enjoyment of the land.
> . . . .
> Defects, liens, encumbrances, adverse claims or other matters:
> (a) created, suffered, assumed or agreed to by the insured claimant;
> (b) not known to [Old Republic], not recorded in the public records at Date of Policy, but known to the insured claimant. . . . ; [or]
> (c) resulting in no loss or damage to the insured claimant.

(Id.).

In 2004, around the time HJH purchased the property, HJH held a permit from the city to build an eight-story, 14-unit condominium. But by 2008, construction had not yet begun, and the project was further stymied by two events. The first was a 2007 amendment to the city's land-use regulations—specifically, a change to the way beachfront property must be measured when calculating the number of residential units into which a property

may be subdivided, a calculation known as "unit yield" or "property density." Before that amendment, beachfront property could be measured for unit yield to the water line, and that measurement yielded HJH the 14 units submitted in its 2004 permit. After the amendment, property was required to be measured from certain setback lines, and HJH's property, with this new measurement, yielded only 10 units. HJH's proposed residential project no longer complied with the law.

The second event was the city's claim, in 2008, that the county, not HJH, held title to the east 150 feet of the property for the benefit of the public as a beach. The county's title, the city claimed, could be traced to a recorded 1917 plat that purported to create property lines consistent with an 1889 beach dedication.[1] For these reasons, the city denied HJH's construction permits.

HJH notified Old Republic of the adverse title claim and requested that the insurer defend HJH against the claim as provided for in the policy. Old Republic agreed and filed a quiet-title action against the city and the county. Kahama later acquired the mortgage and, with it, protection under the policy as a successor lender. Old Republic, in other words, was from that point litigating to establish title on not only HJH's behalf, but on Kahama's as well.

The trial court's conclusions were mixed: it held that HJH (and, by extension, Kahama as lienholder) owned the property in question—all 100-by-300 feet of it, from the

---

[1] The 1889 plat, with the express beach dedication, did not refer to HJH's property, only lots to the north of its property, but it referred to "Beach Street" as the location of the dedication, and Beach Street continued south across HJH's property.

mean high-water line on the east to 300 feet inland on the west—in fee simple, but also that a dedicated public beach, per the 1917 plat, extended 150 feet westward of the water line, past the sand dunes that provide a natural boundary for the beach, and halfway into HJH's property.

The Fifth District Court of Appeal reversed this latter holding. *See HJH, L.L.C. v. Volusia Cnty.*, 170 So. 3d 100, 101 (Fla. 5th DCA 2015). It concluded that the trial court misread earlier precedent interpreting the beach dedication contained in the 1917 plat. That dedicated beach, the court concluded, extended from the ocean but only to the eastern foot of the sand dunes, roughly half the size of what the trial court had concluded.

The Fifth District made two more findings that, while not central to its holding on the size of the dedication, are relevant to the motion now before this Court. The first concerned HJH's ownership interest. The Court found that Florida's Marketable Record Title to Real Property Act, Fla. Stat. §§ 712.01–712.11, conferred fee simple ownership to HJH, regardless of any earlier plats, because HJH was able to trace its title to a transaction recorded more than 30 years earlier and purporting to convey a fee simple estate.[2] In short,

---

[2] The statute states:

> "Any person . . . who, alone or together with her or his predecessors in title, has been vested with any estate in land of record for 30 years or more, shall have a marketable record title to such estate in said land, which shall be free and clear of all claims except the matters set forth as exceptions . . . . A person shall have a marketable record title when the public records disclosed a record title transaction affecting the title to the land which has been of record for not less than 30 years purporting to create such an estate either in:
>
> (1) The person claiming such estate; or

the Court found that, by operation of this law, HJH retained the exact ownership interest it

had acquired when it purchased the property.

The second finding involved the public's access to and use of the beach. Relying on

Florida appellate-court precedent, the Court found that the public in this part of Florida, by

virtue of its perennial and uninterrupted access to and use of the sandy portion of the beach,

had acquired a customary right to that access and use, a right with which neither HJH nor

any subsequent owner could interfere. *See id.* at 101–02 (citing *Trepanier v. Cnty. of*

*Volusia*, 965 So. 2d 276, 286 (Fla. 5th DCA 2007)). Importantly, the Court found, as it

previously had, that formal dedications, like those in the 1889 and 1917 plats the county

relied upon, did not create the customary right—they merely reinforced it. *See id.* at 103

("The trial court determined that the 1917 plat made a common law public dedication of

the area labeled "Ocean Beach" . . . . Th[is] finding[] [is] not in dispute in this appeal.");

*id.* at 103–04 ("the 1889 Austin plat 'manifests the clear intent of the dedicator that the

land between the lots and the ocean, be used for the many purposes *customarily incident*

*to* use of a beach at that time . . . .'") (emphasis added) (quoting *Reynolds v. Cnty. of*

*Volusia*, 659 So. 2d 1186, 1190 (Fla. 5th DCA 1995)); *see also* Amended Final Judgment,

*HJH L.L.C. v. Volusia Cnty, Florida*, Case No. 2008-20156-CINS-02 (Fla. 7th Cir. Ct.

June 7, 2016) (CM-ECF Dkt. 546-2, pp. 11–12).

---

(2) Some other person from whom, by one or more title transactions,
such estate has passed to the person claiming such estate . . . .

Fla. Stat. § 712.02. Exceptions include "[r]ecorded or unrecorded easements or rights, . . . so long
as the same are used and the use of any part thereof shall except from the operation hereof the right
to the entire use thereof." Fla. Stat. § 712.03(5).

The ultimate effect of the appeal was two-fold: first, it affirmed that HJH owned the parcel it purchased and insured in fee simple; and second, it clarified that the public had a right—a customary right it had long ago acquired—to use the sandy portion of the beach east of the dune.

In January 2015, this Court issued a foreclosure judgment on the property. (Dkt. 491). The property has yet to be sold.

## Discussion

Now Old Republic moves for summary judgment. It argues, in short, that it prevailed in the quiet-title action—or, more precisely, that it prevailed on every matter covered by the insurance policy. The matter of ownership, Old Republic argues, was covered, and the action restored fee simple ownership. The matter of the public's right to the beach, Old Republic argues, was not covered, because the right was conferred outside the property's chain of title and because the right is excluded from coverage as a "law . . . relating to [] the occupancy, use, or enjoyment of the land." (Dkt. 546, pp. 18, 22). As explained below, the Court finds these arguments persuasive and Kahama's responses to them unavailing.[3]

---

[3] Old Republic also argues that the property has not suffered any diminution in value, namely because the customary right to the beach enjoyed by the public is one that the market will and always has considered when assessing value. Without such a diminution, Old Republic argues, Kahama cannot establish a claim. *See* Dkt. 546, pp. 14–15 (citing *Village Carver Phase 1, LLC v. Fidelity Nat'l Title Ins. Co.*, 128 So. 3d 107, 111 (Fla. 3d DCA 2013)). The Court likewise finds this argument persuasive, but because the argument is unnecessary for the Court's resolution of this case, and because the evidence in the record supporting the argument is light, the Court will not evaluate it in detail.

**Legal Standards**

    **I.**       **Summary Judgment**

A motion for summary judgment forces a court to "pierce the pleadings and [] assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Motions for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue over any material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; rather, the record must reveal a "*genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). Facts are material if, under the applicable substantive law, they might affect the outcome of the case. *See id*. And disputes over those facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*.

Because the Court is sitting in diversity, the substantive law of the forum state applies. *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., 412 F.3d 1224, 1227 (11th Cir. 2005). Under Florida law, insurance policies are interpreted according to the law of the place the insurer issued the policy. *State Farm Mut. Auto Ins. Co. v. Roach*, 945 So. 2d 1160, 1161 (Fla. 2006). The parties here agree that the insurance policy was issued in Florida. Its relevant substantive law will apply.

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the relevant documents that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. If the moving party meets its burden, the non-moving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. Conclusory allegations will not suffice. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Neither will "a mere scintilla of evidence supporting" the non-movant's claims. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (internal quotations omitted). The non-movant must instead present facts that are significantly probative to support those claims. *Anderson*, 477 U.S. at 248–49 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288– 89 (1968)).

A court ruling on a motion for summary judgment must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson,* 477 U.S. at 255. After the non-moving party has responded to the motion, the court must grant summary judgment if there exists no genuine issue of material fact and the moving party deserves judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## II.      Title Insurance Generally

A title insurer's liability is based in contract. *La Minnesota Riviera, LLC v. Lawyers Title Ins. Corp.*, 2:07-CV-77-FTM-29DNF, 2007 WL 3024242, at *3 (M.D. Fla. Oct. 15, 2007). Interpreting insurance contracts begins, as it does with all contracts, with their plain

meaning. *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010) (internal quotation marks and citations omitted).

Florida law defines title insurance as "[i]nsurance of owners of real property . . . against loss by encumbrance, or defective titles, or invalidity, or adverse claim to title." Fla. Stat. § 624.608(1). A title policy "indemnifies rather than guarantees the state of the insured title." *Lawyers Title Ins. Co. v. Synergism One Corp.*, 572 So. 2d 517, 518 (Fla. 4th DCA 1990). It provides indemnity against actual monetary losses resulting from specified causes, such as title defects, liens, or encumbrances existing on the date the insurer issues the policy—unless, of course, the cause is excepted in the policy. *See Penzer*, 29 So. 3d at 1005; *see also Goode v. Federal Title & Ins. Corp.*, 162 So. 2d 269, 270 (Fla. 3d DCA 1964). Title insurance should not be confused with casualty insurance: a title insurer will not be held liable for events occurring after the policy is issued, even those events that affect the marketability or profitability of the property. *See Village Carver Phase 1 LLC v. Fidelity Nat. Title Ins. Co.*, 128 So. 3d 107, 111 (Fla. 3d DCA 2013); *cf. Enduschat v. American Title Ins. Co.*, 377 So. 2d 738, 741 (Fla. 4th DCA 1979). Similarly, a title insurer will not be held liable for loss resulting merely from the invalidity of the debt, the unenforceability of the note, or the obligor's failure to repay the debt underlying the insured mortgage. *Lawyers Title Ins. Co. v. Novastar Mortgage*, 862 So. 2d 793, 797 (Fla. 4th DCA 2003).

As Florida's Second District Court of Appeal has said, title insurance exists for the very reason the "man on the street buys a title insurance policy[:] to insure against defects in the *record title*." *Morton v. Attorneys' Title Ins. Fund, Inc.*, 32 So. 3d 68, 71 (Fla. 2d

DCA 2009) (emphasis in original) (internal quotation marks and citations omitted). Title insurance covers losses caused by these record defects. *See id.* (citing *Krause v. Title & Trust Co. of Fla.*, 390 So. 2d 805, 806 (Fla. 5th DCA 1980) (defining title insurance as a guaranty that a search in the recorded chain of title is accurate)). And loss is measured as "the difference between the market value of the mortgage, if the lien thereof were as insured, and the market value of the mortgage with the title imperfection." *Nat'l Title Ins. Co. v. Safeco Title Ins. Co.*, 661 So. 2d 1234, 1236 (Fla. 3d DCA 1995) (quoting *Goode v. Federal Title & Ins. Corp.*, 162 So. 2d 269, 271 (Fla. 2d DCA 1964)).

### III.   Florida's Marketable Record Title to Real Property Act

Florida law imposes on title-insurance companies a duty to conduct a "reasonable title search" before issuing a title-insurance "commitment, endorsement, or policy." Fla. Stat. § 627.7845(1). The state's Marketable Record Title to Real Property Act, Fla. Stat. §§ 712.01–712.11, circumscribes that duty. *See Village Carver*, 128 So. 3d at 110.

The Act declares that "marketable record title is free and clear of all estates, interests, claims, or charges, the existence of which depends upon any act, title transaction, event, or omission that occurred before the effective date of root title." Fla. Stat. § 712.04. "Root title" is defined by the Act as "any title transaction purporting to create or transfer the estate claimed by any person and which is the last title transaction to have been recorded at least 30 years prior to the time when marketability is being determined." Fla. Stat. § 712.01.

These provisions, the Florida Supreme Court has said, "operate to complete a transaction which the parties intended to accomplish but carried out imperfectly." *Fla.*

*Dept. of Transp. v. Clipper Bay Investments, LLC*, 160 So. 3d 858, 863 (Fla. 2015) (internal

quotations marks and citations omitted). As a consequence of this curative effect on title,

the Act also "represents a codified limitation on the title insurer's obligation to research

the public records in connection with the issuance of a title insurance policy." *Village*

*Carver*, 128 So. 3d at 110. That limit is the effective date of root title. *See id.* (holding that

title insurer was not liable because easement for the benefit of cemetery visitors could only

have been discovered upon review of a deed recorded in 1908, before the date of root title).

**Kahama's Claims**

   I.   **Failure to Diligently Prosecute**

The question whether a title insurer unreasonably delayed or failed to diligently

pursue litigation in defense of its insured is ordinarily a question for the fact finder. But

when a policy permits the insured to pursue the litigation to a "final determination," as the

policy does here, "the claim only lies once a court speaks, and not before, and not if the

court's judgment is favorable." *See Cocoa Properties, Inc. v. Commonwealth Land Title*

*Ins. Co.*, 590 So. 2d 989, 991 (Fla. 2d DCA 1991) (quoting *Lawyers Title Ins. Co. v.*

*Synergism One Corp.*, 572 So. 2d 517, 518 (Fla. 4th DCA 1990)). In Florida, if a final

determination by a court cures title defects, the claim is precluded as a matter of law. *See*

*Cocoa Properties*, 590 So. 2d at 991; *Synergism*, 572 So. 2d at 518.[4]

---

[4] Other courts, from other federal districts, have criticized this preclusive rule, arguing that litigation successfully curing title may nonetheless be unreasonably delayed or pursued without diligence—and that such a scenario, if it causes damages, breaches the policy. *See, e.g., Hatch v. First American Title Ins. Co.*, 895 F. Supp. 10, 12 (D. Mass. 1995); *Premier Tierra Holdings, Inc. v. Ticor Title Ins. Co. of Florida, Inc.*, No. 4:09-CV-02872, 2011 WL 2313206, *5–7 (S.D. Tex. 2011). The Court finds this argument to be both logical and consistent with the policy of broadly

In the quiet-title action, the trial court and the appellate court and the parties agreed:
the effective date of root title on the property at issue was 1967, and the 1967 title
transaction conveyed fee simple—which meant that, by operation of MRTA, HJH and
Kahama likewise held a fee simple interest in the property. Additionally, the quiet-title
action concluded that the fee simple interest was held over the physical entirety of the
insured parcel, from the mean high-water line on the east to approximately 300 feet to the
west (approximate because the mean high-water line, because of tides, ebbs and flows over
time). In short, the legal description of the property was the same after the case as it was
before it.

Kahama does not dispute this conclusion. Kahama argues that its use of the property
is nonetheless impeded by the public's right to the beach. Compounding this impediment,
Kahama argues, was the fact that the court's established boundary to this public right—the
eastern foot of the dunes—moves over time from weather and erosion.

Kahama's argument is plainly correct. The Court finds, however, that it is also
immaterial because the impediments now facing Kahama affect the property's potential
use, not its title. *See City of Daytona Beach v. Tona-Rama, Inc.*, 294 So. 2d 73, 78 (Fla.
1974). In *Tona-Rama*, the Florida Supreme Court affirmed the public's right to use the

---

construing insurance contracts in favor of coverage. But the Court must apply Florida law. The
on-point Florida appellate opinions are not from the Florida Supreme Court, but from intermediate
appellate courts, and they interpret identical "final determination" language in title-insurance
contracts as creating the hard-and-fast, prevailing-precludes-claim rule. *See Cocoa Properties*, 590
So. 2d at 991; *Synergism*, 572 So. 2d at 518. The Court has no indication that the Florida Supreme
Court would interpret this language differently. Without it, the Court must adopt the same
interpretation. *See Nunez v. Geico Gen. Ins. Co.*, 685 F.3d 1205, 1210 (11th Cir. 2012).

sandy portion of Daytona Beach. The beach in that case was located just twenty miles north

of the beach at issue here, and the court there held that the public had acquired this right

by virtue of its consistent, customary use of the beach, the same way the public acquired

its right to use Kahama's property, according to the quiet-title action. But critically, the

court in *Tona-Rama* also held that the public's right had no impact on the property's title:

> This right of customary use of the dry sand area of the beaches by
> the public does not create any interest in the land itself.
>    . . . .
> The general public may continue to use the dry sand area for their
> usual recreational activities, not because the public has any
> interest in the land itself, but because of a right gained through
> custom to use this particular area of the beach as they have without
> dispute and without interruption for many years.

*Id.* In 2007, this same language from *Tona-Rama* was quoted approvingly by Florida's

Fifth District in a case concerning the same Volusia County beach at issue here. *See*

*Trepanier v. Cnty. of Volusia*, 965 So. 2d 276, 287 (Fla. 5th DCA 2007). And in 2013,

Florida's Third District held that an easement for the benefit of descendants visiting family

gravesites did not create a property interest, even though that easement and the

descendants' right to use it was conferred and protected by a Florida statute. *See Village*

*Carver*, 128 So. 2d at 111 (citing Fla. Stat. § 704.08).

The public's right to the beach in this case is no different from the public's right in

*Tona-Rama*. As it was there, that right is not an interest in title. Title was indeed challenged

in this case, when the county asserted an interest in title to the east 150 feet of the property.

But Old Republic defended Kahama against that claim, and the quiet-title action restored

Kahama's title to fee simple in the entire parcel its mortgagor purchased and insured. Under

Florida law, Kahama is precluded from now claiming that Old Republic did not diligently defend Kahama in that action. *See Cocoa Properties*, 590 So. 2d at 991. On this claim, Old Republic's motion for summary judgment will be granted.

## II.    Failure to Conduct a Reasonable Title Search

Kahama's second claim fails because Old Republic had no duty to discover the public's right-of-access and -use to the beach as part of its title search. Whether it is called a dedication or easement or encumbrance, the public's right to the beach accrued before 1967, the undisputed date of root title. Under Florida law, Old Republic had no obligation to research the public records before this date. *See Village Carver*, 128 So. 3d at 110. Old Republic did not breach its duty to conduct a reasonable title search.

Furthermore, Old Republic's policy excludes from coverage "[a]ny law, ordinance or governmental regulation . . . restricting, regulating, prohibiting or relating to [] the occupancy, use, or enjoyment of the land." (Dkt. 546-1, p. 2). The customary right to use the beach, discussed above, is recognized as a law. *Tona-Rama* called it the "law of custom." 294 So. 2d at 81 (Irving, J., dissenting). The quiet-title action called it "common law." *See HJH, L.L.C. v. Volusia Cnty.*, 170 So. 3d at 102; *see also Trepanier*, 965 So. 2d at 289 (referring to it as a "source of law" and requiring for its application proof of certain elements). Kahama concedes that the public's easement to the beach restricts Kahama's use of it. In fact, this point is Kahama's general contention in the case. But it is the *law* of custom that gives the public this right to enjoy the beach without interference. It is thus the law that restricts Kahama's use of the beach. Coverage for this kind of restriction is plainly excluded in the policy, even if title insurance generally requires it. *See Morton*, 32 So. 3d

at 71 ("coverage exceptions in title insurance policies serve as the only 'feasible method' to protect the insurers from circumstances that affect title but are not reflected by an examination of the public records") (internal quotation marks and citations omitted).

For Kahama, this case has never really been about the public's right to use the sandy beach portion of Kahama's property. Indeed, in all the filings in this case, never once has Kahama alleged that it or any owner ever intended to build residences on the portion of the property east of the sand dunes. No, this case has been about Kahama's right to use and profit from its property. And the only thing affecting this use has been the city's land-use law.

Today Kahama owns the same parcel of land, in the same fee simple interest, that HJH owned and insured in 2004. The only difference is that the law once allowed but now prohibits the construction of the 14-unit project HJH had hoped to build. The difference is that now, by virtue of this prohibition, the property is purportedly less valuable. Title insurance policies, unless specifically noted in the policy, do not cover future changes to land-use regulations, even if those regulations cause an economic loss. *See Penzer*, 29 So. 3d at 1005; *see also Novastar*, 862 So. 2d at 793 ("title insurance is protection against future loss because of past, [pre-policy] events"). Even if they did cover such regulations, the policy here excluded them. (Dkt. 546-1, p. 2 (excluding "[a]ny law, ordinance or governmental regulation . . . restricting, regulating, prohibiting or relating to [] the occupancy, use, or enjoyment of the land")).

Kahama alleges that the city's land-use amendments were only enacted after the county discovered its purported interest in the east 150 feet of Kahama's property and that,

importantly, the amendments were intended to protect this interest. Old Republic should have discovered and disclosed to HJH this purported interest or the beach easement, Kahama argues, because the disclosure would have been vital to HJH's decision to purchase the property and build on it.

Even if true, these allegations and the argument they support are immaterial. For one, as stated above, the quiet-title action defeated the county's asserted interest in the property, and Old Republic had no duty to discover the beach easement. And two, local changes to land-use laws will invariably occur for innumerable reasons. A bad hurricane season, concerns over global warming, or any combination of reasons may cause an ocean-front city to amend land-use regulations, like those the city enacted here, for the purpose of reducing property density. If title insurance, as a rule, does not protect an insured from the effects of future land-use amendments, title insurance cannot possibly be expected to cover the effects of land-use amendments that are motivated by some particular event. The policy here contains no such particularized provision. Without such a provision, the land-use regulations and amendments affecting Kahama's property were not covered by the policy.

On Kahama's claim that Old Republic failed to conduct a reasonable title search, Old Republic's motion for summary judgment will be granted.

It is **ORDERED AND ADJUDGED** that:

1. Defendant Old Republic National Title Insurance Company's Motion for Summary Judgment on Count XII of Plaintiff's Third Amended Complaint (Dkt. #546) is GRANTED.

2.      The Clerk is directed to enter JUDGMENT in favor of Defendant Old

Republic National Title Insurance Company and against Plaintiff Kahama

VI, LLC.

3.      Plaintiff may move for an order confirming the sale of the property at issue

in this case and any deficiency judgment, if applicable.

4.      The Clerk is further directed to CLOSE this case and terminate all pending

motions as moot.

**DONE** and **ORDERED** in Tampa, Florida, this 6th day of December, 2016.


_____

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE


Copies furnished to:
Counsel/Parties of Record